Rose Finsky, Trading as Duophoto Sales, for Use of Rose Finsky, Avrum N. Andalman and Maxwell N. Andalman, Trading as Surplex Sales, Appellant, v. Ray Odman, Trading as Ray Paper Company, Appellee.

Gen. No. 44,378.

Opinion filed March 1, 1949.   Released for publication May 12, 1949.

LEONARD J. BRAVER, of Chicago, for appellant; MAX-WELL N. ANDALMAN and AVRUM N. ANDALMAN, both of Chicago, of counsel.

OWEN & LUNDEBERG, of Chicago, for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This is an action brought by plaintiff, Rose Finsky, to recover damages from the defendant, Ray Odman, doing business as Ray Paper Company, for an alleged breach of contract. Defendant filed a counterclaim against plaintiff. The case was tried before the court without a jury. There was a finding and judgment against plaintiff on her original claim and a finding and judgment against defendant on his counterclaim. Plaintiff appeals from the judgment entered against her. No question is raised on the pleadings.

It appears that Rose Finsky, who is a court reporter, and Attorney Maxwell N. Andalman and his son, Attorney Avrum N. Andalman, had offices in the same suite in 1945 and that she sometimes performed stenographic services for Attorney Maxwell N. Andalman (hereinafter for convenience referred to as Attorney Andalman). For sometime prior to July 15, 1945, Rose Finsky was also the sole proprietor of a business which dealt in surplus war products under the trade name of Duophoto Sales. Attorney Andalman handled all of her purchases and sales. On or about July 15, 1945, Attorney Andalman, his son and Rose Finsky, the

beneficial plaintiffs in this case, formed a partnership, each of them owning a one-third interest therein. This partnership, which was organized to deal in surplus war products under the trade name of Surplex Sales, took over the business theretofore conducted by Rose Finsky, including the alleged contract involved herein between Rose Finsky, doing business as Duophoto Sales, and the defendant, Ray Odman, doing business as Ray Paper Company.

Elmer T. Moore was a sales broker who worked out of defendant's office on commission. It is undisputed that his sole authority was to negotiate sales and that no sale could be made by him without defendant's approval. As the result of negotiations between Moore, representing defendant, and Attorney Andalman, representing plaintiff, Attorney Andalman prepared the following option, which was signed by defendant:

"June 23, 1945.

Duophoto Sales,
134 North LaSalle Street,
Chicago, Illinois
Attention Mr. M. N. Andalman.

Gentlemen:

The undersigned, Ray Paper Company, Ray Odman, Proprietor, acknowledges receipt of the sum of $100.00, at your hand, for which you are hereby given an option to purchase 1,100,000, more or less, Solid Chipboard Cylindrical Containers, metal ends, half telescope, $2\frac{1}{2}$ inch diameter, I.D., and approximately 5 inches high, at $10.00 per M, f.o.b. Chicago, our Warehouse on the north side; this option to expire at noon, CWT Wednesday, June 27th, 1945.

If you exercise the option, it is understood that these containers will be delivered to you in corrugated cardboard cartons, containing not less than 50 or more, in multiples of ten, and marked to indicate quantity contained therein. There will be no charge to you for the cardboard cartons.

*Upon exercise of the option, you are to receive credit for the $100.00, above mentioned, and are to pay an additional sum equal to 20% of the total purchase price, which total of 20% is to be held against the shipment of the final lot. Then at your option, you may receive at our warehouse such quantities, C.O.D., as you may call for delivery,* it being understood that you will accept delivery of the entire purchase within sixty to seventy days from the date of exercise of option. It is also understood that you will call for delivery in not less than motor truck lots. The corrugated cartons will be tied with strong twine or rope, but not sealed. Upon final delivery, if more than 1,100,000 are turned over to you, you are to pay us for same upon invoice. On the other hand, if less than 1,100,000 are delivered to you for your order, we will make proportionate refund.

If you fail to exercise the option, as indicated, it is understood that you are [I am] to keep the $100.00 as liquidated damages.

Signed, Sealed and Delivered at Chicago, Illinois, this 23rd day of June, 1945.

Ray Paper Company

By: Ray L. Odman" (Italics ours.)

This option was extended seven days by defendant. The containers, which defendant offered to sell plaintiff under said option, were at the Ordnance Plant at Illiopolis, Illinois, where they were packed in wooden boxes.

It was understood by defendant that plaintiff would not be interested in purchasing the containers from him unless she first secured a customer who would buy them from her. She did secure such a customer. Wells Sales, Inc. and its treasurer, Elmer E. Rullman, entered into a written contract with her to purchase all of the containers specified in the option. Said contract does not bear any date but it appears from the context thereof that it was apparently executed on June 28, 1945. Under the terms of this contract the containers

were to be delivered by plaintiff to Wells Sales, Inc. and Rullman not later than August 28, 1945.

Attorney Andalman prepared and caused to be delivered to defendant the following letter, which purported to exercise the option theretofore given to plaintiff to purchase the containers:

"June 30, 1945

Ray Paper Company
201 N. Wells Street
Chicago, Illinois
Att'n: Mr. Ray L. Odman, Prop.

Gentlemen:

The undersigned, R. Finsky, proprietor of Duophoto Sales hereby notifies you of the exercise of the option you gave Duophoto by letter of June 23, 1945, which option expires by extension on July 4th or 5th, 1945. Under the arrangement your Mr. Odman made with Mr. Andalman by phone today, it is understood that you are to deliver the 1,100,000 more or less containers into the bonded warehouse of Charles A. Mortimer Warehouse Co., 1634 S. Federal Street, Chicago, Illinois.

The same are to be delivered in the original wooden boxes in lots of approximately 20,000 [2,000], each being filled with 50 of the containers or a total of approximately 100,000 in each lot. Facilities will there be provided for the transfer by you into the corrugated cartons to hold 64 or more of the containers. The quantity in each carton to be plainly marked on the outside.

*The warehouse company will issue its nonnegotiable warehouse receipt in the name of Duophoto Sales, R. Finsky, proprietor, to cover each lot as repacked showing the amount of the cartons and the total containers covered by each of said warehouse receipts. These warehouse receipts to be delivered to us under our trust receipt and committment to pay our purchase price for*

*same within forty-eight hours or return warehouse receipt.*

The $100.00 we have deposited with you is to be retained by you in addition to be applied against the last warehouse receipt. Kindly acknowledge your approval in writing by letter.

We will appreciate it if you will move the thing along as soon as possible.

> Yours very truly,
> Duophoto Sales
> . By: R. Finsky.'' (Italics ours.)

Defendant did not at any time give his written approval to the purported exercise of option, as requested by plaintiff, and, as will be hereinafter shown, the so-called exercise of option was a counterproposal rather than an acceptance of defendant's offer to sell.

Attorney Andalman testified that before he prepared the foregoing letter, he advised defendant over the telephone as to the terms that he was going to incorporate therein and that Odman agreed to such terms; and that after said letter was prepared, he read the contents thereof to Odman over the telephone and he again approved same.

Elmer T. Moore testified in substance that on numerous occasions prior to the time the exercise of option letter was delivered to defendant he discussed with the latter the terms that Attorney Andalman proposed to include therein and that Odman told him that he would agree to such terms and that ''we will deliver the cans.'' Moore did not recall having any conversation with Odman concerning the terms specified in the exercise of option letter after defendant had received same.

Odman testified that Attorney Andalman knew that the containers were at Illiopolis when plaintiff received the written option on June 23, 1945; that he had a telephone conversation with Attorney Andalman on or

about June 30, 1945, when the exercise of option letter was being prepared; that he said to Attorney Andalman in that conversation that he "wouldn't give him any trust agreement on the warehouse, where I had absolutely no control of the merchandise that was mine . . . as soon as I got the 20% the merchandise would move"; that almost immediately after he received the purported exercise of option of June 30, 1945, he had another telephone conversation with Attorney Andalman; and that in that conversation he told Attorney Andalman that he would start shipping the containers to plaintiff as soon as he (Odman) received the 20 per cent advance payment specified in the option.

According to Attorney Andalman, he and Rose Finsky sent several letters to defendant concerning the transaction subsequent to June 30, 1945. Although defendant testified variously that he did not receive these letters or that he did not remember having received them, it will be assumed that he did receive them.

Attorney Andalman's first letter, dated July 6, 1945, after referring to transactions other than that involved herein, requested defendant to "send us letter confirming our exercise of option to purchase the chipboard containers." Then followed three other letters from Attorney Andalman and one from Rose Finsky to defendant, dated July 17, 1945, July 23, 1945, July 24, 1945 and August 16, 1945, respectively, requesting delivery of the containers.

Shortly prior to August 20, 1945, the National Lead Company ordered from defendant about 600 of the wooden boxes in which the containers were packed. These boxes, with 30,600 containers in them, were shipped from the Ordnance Plant at Illiopolis to the National Lead Company's plant in Chicago, where defendant's employees removed the containers from the wooden boxes and packed them in cardboard cartons. Plaintiff was advised by defendant that she might have

these containers, if she paid for them before they were delivered to her. She received them after she had paid for them.

On August 20, 1945, Rose Finsky mailed a letter to defendant, the pertinent portions of which are as follows:

"Ray Paper Company
201 N. Wells Street
Chicago, Illinois

Gentlemen:

I acknowledge receipt at your hands of signed order for Surplex Sales to pick up 510 cardboard boxes containing 30,600 cylindrical chipboard boxes, being part of the 1,100,000 more or less of these items purchased from you under my 'Exercise of Option' date June 30, 1945. . . .

Please notify when you have more of the containers on hand. Our customer is anxious to get them without delay."

On August 23, 1945, Attorney Andalman wrote another letter to defendant, in which he referred to the purchase from Odman by Duophoto Sales of 1,100,000 cylindrical chipboard containers "as per exercise of option of June 30, 1945" and demanded delivery of such containers.

Defendant testified that Attorney Andalman called him three or four times a week during July and August 1945, requesting delivery of the containers, and that he (Odman) told him the same thing every time he called, "Just as soon as you get that money, the cans will move"; that Attorney Andalman promised to get the money over to him; and that he had all the cans down at Illiopolis at that time, there being no market for them.

According to Attorney Andalman, he did have repeated telephone conversations with defendant subsequent to June 30, 1945, in all of which Odman promised

to make delivery of the containers and said nothing about the 20 per cent advance payment specified in the option.

Attorney Andalman further testified that David Korup procured Elmer E. Rullman, treasurer of Wells Sales Co., as a customer to purchase the containers from plaintiff; that Korup came to his office on Saturday, August 25, 1945 and that he authorized him (Korup) to communicate with defendant by telephone; that Korup had four telephone conversations with Odman from his (Andalman's) office that day; that during the entire course of these four telephone conversations, he (Andalman) had his "ear glued to the receiver with Korup" with his "head against Korup's" and heard everything that both Korup and Odman said; and that he also had Rose Finsky on an extension "with note book in her hand taking down the conversations."

According to Attorney Andalman and Korup, the substance of the latter's telephone conversations with defendant on August 25, 1945 was that Odman readily agreed that he would have all of the containers, packed as they were in wooden boxes, loaded on freight cars immediately and shipped to Chicago without any advance payment, that he would not expect to be paid for the wooden boxes and that he would "bill this stuff to Mr. Korup c/o Mortimer Warehouse, 1634 So. Federal Street, Chicago, Illinois."

It was stipulated that if Rose Finsky were called as a witness her testimony as to the telephone conversations between Korup and Odman would be to the same effect as that of Attorney Andalman.

As to this aspect of the case Odman testified that Attorney Andalman called him about noon on Friday, August 24, 1945 and said that a Mr. Korup, who was his "principal" and "really buying these cans" would telephone him; that Korup did call him about ten or fifteen minutes later and said that he was the party

"Mr. Andalman told you would call"; that Korup then said, "I have to have the cans up here . . . I am willing to pay for them"; that he (Odman) said, "Just as soon as I get that option money, I will give you the cans . . . I will get those cans moving as soon as the money would be paid"; that Korup said, "I will give you $10,000 as soon as those cans are here"; that he then made the necessary arrangements to have the containers loaded on freight cars and shipped to Chicago; that Korup told him "to ship the containers to him [Korup] c/o the Mortimer Warehouse, 1632 South Federal Street, Chicago, Illinois," which he did; and that it required 21 freight cars and 2 motor trailers to haul the containers from Illiopolis to Chicago.

Upon the arrival of the containers in Chicago on August 28, 1945, a controversy arose between the parties, which resulted in defendant's refusal to deliver them to either Korup or plaintiff. The testimony as to said controversy presented in plaintiff's behalf being in effect that defendant demanded $1 a box for the wooden boxes in which the containers were packed, in addition to the price of the containers, before he would deliver them. The testimony presented in defendant's behalf being in effect that plaintiff's agent, Korup, refused to pay him anything upon the arrival of the containers in Chicago; that because of Korup's failure to pay him $10,000 for the containers, as he had agreed to do, Odman refused to deliver them to plaintiff or her agent, Korup; and that he did not demand payment from plaintiff, Korup or Attorney Andalman of $1 a box for the wooden boxes. According to Odman, he had sufficient cardboard cartons in Chicago to which the containers could be transferred from the wooden boxes but there was no space available in the Mortimer warehouse for their temporary storage.

Odman then shipped the containers to a warehouse in Hammond, Indiana, about 340,000 of them packed in

cardboard cartons and about 1,000,000 of them packed in wooden boxes. The containers that were packed in wooden boxes were removed therefrom by defendant in the Hammond warehouse and packed in cardboard cartons. Defendant sold all of the wooden boxes in lots of 50 for ninety cents a box. He also sold about 50,000 of the containers and about 1,300,000 of them were still stored in the Hammond warehouse at the time of the trial. Odman paid $8,800 for storage of the containers in the Hammond warehouse and $2,962 for freight and trucking charges for their shipment to Chicago.

Defendant wrote the following letter to Attorney Andalman on September 27, 1945:

"Surplex Sales
134 N. LaSalle St.
Chicago, Illinois

Gentlemen:
Attention: M. N. Andalman
We have your letter of September 24, sent registered mail, to the writer. . . .

Your $100.00 on the cylindrical container account, 1,100,000 more or less, was surrendered to us because we lived up to our terms of delivering this item by 7 o'clock, Tuesday, August 28, 1945. Your option expired on Tuesday of the same date at 5:00 p.m. You failed to take delivery through your agent Mr. Korup after you had us go to the trouble of shipping 21 carloads and 2 trailers. When he appeared at our office on the following day, he didn't have any money to pay for the freight much less the merchandise.

We believe this will terminate any negotiations we have with you at the present time.

Very truly yours,
Ray Paper Company
R. L. Odman."

Plaintiff contends that "a contract between the parties was in fact concluded by the letter of June 30, 1945."

It will be recalled that the option provided that upon the exercise thereof by plaintiff she was required to make an advance payment equal to 20 per cent of the total purchase price, such payment "to be held against the shipment of the final lot," and that it also provided for C.O.D. payments by plaintiff for such quantities of the containers, as she "may call for delivery." It is obvious that the first of the foregoing terms was included in the option as additional assurance that plaintiff would fully perform the contract if she exercised the option and that the second of such terms indicated defendant's clear intention to retain title to and control of the merchandise until it was paid for by plaintiff before it was delivered to her.

It will be noted that the purported exercise of option contained in plaintiff's letter of June 30, 1945, did not even mention the advance payment of 20 per cent of the full purchase price or the C.O.D. payments required by the option but provided in lieu thereof for a warehouse and trust receipt arrangement, whereby defendant would be divested of his title to and control of the containers without having been paid anything therefor. What Attorney Andalman proposed in effect in said letter was that defendant would be obligated to ship in excess of 21 carloads of containers from Illiopolis to Chicago at a freight charge of several thousand dollars without any advance payment, that he pay the expense of transferring the 1,100,000 containers from the wooden boxes to cardboard cartons and that plaintiff could then elect to pay for the containers within 48 hours after she had received the warehouse receipts therefor or return such warehouse receipts to the warehouse.

It is readily apparent that plaintiff's letter of June 30, 1945, did not exercise the option in accord-

ance with its terms but differed materially therefrom. It was therefore not an acceptance of the offer contained in the option but a counterproposal. It has been repeatedly held that a reply to an offer, though purporting to accept it, which is not an acceptance but a counterproposal, must in turn be accepted by the original offeror in order to create a contract.

Since no contract between the parties was in 'fact or in law "concluded by plaintiff's letter of June 30, 1945," she next contends that "where reply to offer constitutes a counter-proposal, contract can· nevertheless be made by parol acceptance of counter-proposal."

■ ■ The law applicable to plaintiff's instant contention is clearly stated in *Anglo-American Provision Co. v. Prentiss,* 157 Ill. 506, where the court said (pp. 513, 514):

"It is undoubtedly the rule that where one party makes a proposition to another, an assent, to be valid so as to conclude an agreement or contract between the parties, must, in every respect, meet and correspond with the offer, neither falling short of nor going beyond the terms proposed, but exactly meeting them at all points and closing with them just as they stand. . . . Treating the defendant's letter as a mere proposition or offer, and the plaintiff's reply as an acceptance with a modification of terms, the case would seem to fall within the rule that an acceptance of a proposition with modifications constitutes, in law, a rejection of it, and the substitution in its place of a new proposition, which, to constitute a contract, must itself be accepted by the other party. The acceptance, however, need not be in writing, but it may be made orally, or be inferred from the conduct of the other party."

It is stated in plaintiff's brief that Moore was in the office of Attorney Andalman when the latter read to the defendant over the telephone the entire contents of the letter of June 30, 1945 and that both Attorney Andalman and Moore "swore on the stand that defend-

ant over the telephone, concurred in the letter's provisions and orally agreed thereto.'' We have searched the record in vain for any testimony by Moore that he either heard Attorney Andalman read the letter of June 30, 1945 to defendant over the telephone or heard Odman concur ''over the telephone'' in the letter's provisions and orally agree thereto. It is true that Attorney Andalman testified that defendant orally agreed over the telephone to the ''letter's provisions'' both before and after it was prepared but his testimony in this regard is uncorroborated by any other fact or circumstance in evidence.

· Defendant, in his testimony, denied that he orally agreed to the terms of the counterproposal on June 30, 1945 or at any other time and stated that he insisted on the advance payment specified in the option every time Attorney Andalman mentioned the transaction to him. It is difficult to perceive why Odman persisted in his refusal to give his written approval of the counterproposal, as requested by plaintiff, if he had already orally agreed to the terms thereof. In view of the fact that the counterproposal contained the warehouse and trust receipt arrangement, hereinbefore referred to, it is not only highly improbable but inconceivable that defendant would orally agree to any such arrangement.

Furthermore, there is no evidence in the record as to any conduct on the part of defendant subsequent to June 30, 1945, from which his acceptance of plaintiff's counterproposal could be inferred. Despite plaintiff's numerous letters and telephone calls requesting delivery of the containers, defendant steadfastly refused to deliver any of them, unless plaintiff first made the advance payment of 20 per cent of the full purchase price of the 1,100,000 containers, as provided in the option. It seems clear that the warehouse and trust receipt arrangement was incorporated in the letter of June 30, 1945 for the sole purpose of relieving

plaintiff from making the advance payment of $2,200 and the C.O.D. payments specified in the option and of further relieving her from paying for containers delivered to her by defendant, in the event that her customer failed and refused to pay her for them.

■ Plaintiff stresses the significance of the delivery of the 30,600 containers to her on August 20, 1945. In our opinion, this was an isolated transaction, which had no possible relation to the counterproposal. As has been seen, the National Lead Company ordered about 600 of the wooden boxes in which the containers were packed. The shipment of the 30,600 containers was merely incidental to the shipment of the wooden boxes to the National Lead Company's plant in Chicago. After defendant removed the containers from the wooden boxes and packed them in cardboard cartons at said plant, plaintiff was informed that she might have them, if she paid for them before they were delivered to her. She received these containers after she had paid for them. Certainly, it cannot be said that defendant's conduct in selling these containers to plaintiff under the circumstances indicated tended to prove his assent to the counterproposal. Inasmuch as defendant's option was not exercised by plaintiff by her letter of June 30, 1945 and we have already held that the sale and delivery of the 30,600 containers to plaintiff was a separate and distinct transaction, wholly unrelated to the counterproposal, the letter from plaintiff to defendant of August 20, 1945, which contains the statement that the 30,600 containers were ''part of the 1,100,000 more or less of these items purchased from you under my 'Exercise of Option' date June 30, 1945,'' has no probative force as to any issue in this case. The same is true as to the check referred to in said letter of August 20, 1945, which was used to pay for the 30,600 containers.

The fact that plaintiff had entered into a contract on June 28, 1945 for the resale of the containers and

that defendant knew that she had such a contract has no material bearing on the question as to whether it could be reasonably inferred from defendant's conduct that he assented to plaintiff's counterproposal or orally agreed to the terms thereof.

This brings us to the telephone conversations between Korup and Odman which resulted in the shipment by defendant of all of the containers to Chicago. All that need be said as to these conversations is that defendant's version thereof was entirely consistent with his position ever since he gave plaintiff the option to purchase the containers—he was willing to ship them to her as soon as she made the advance payment specified in the option. It is true, according to Odman, that he finally yielded to Korup's persuasion and agreed to ship the containers upon Korup's promise that he (Odman) would be paid $10,000 upon the arrival of the containers in Chicago. Plaintiff's version of these conversations is inconsistent with defendant's conduct since the inception of the transaction and even with her own counterproposal. It was in effect that, notwithstanding defendant's steadfast refusal theretofore to deliver *any* of the containers to plaintiff unless she first made the aforesaid advance payment, he readily agreed not only to deliver *all* of the containers in one shipment without any advance payment but to throw in for good measure, as it were, the wooden boxes, which were worth nearly twice as much as the containers.

The respective versions of the parties as to what was said during the course of the telephone conversations between Korup and Odman speak for themselves and we therefore think that any further comment on them is unnecessary. We fail to perceive anything in either version of said telephone conversations indicating any conduct on defendant's part that would tend to prove that he assented to plaintiff's counterproposal.

The only other matter that need be considered is the letter from defendant to Attorney Andalman of September 27, 1945, which reads in part as follows:

"Your $100.00 on the cylindrical container account, 1,100,000 more or less, was surrendered to us because we lived up to our terms of delivering this item by 7 o'clock, Tuesday, August 28, 1945. Your option expired on Tuesday of the same date at 5:00 p. m. You failed to take delivery through your agent Mr. Korup after you had us go to the trouble of shipping 21 carloads and 2 trailers. When he appeared at our office on the following day, he didn't have any money to pay for the freight much less the merchandise."

It is urged that the "$100.00 on the cylindrical container account" referred to in the foregoing letter pertains "to nothing other than the option agreement represented by the two letters of June 23 and June 30, 1945" and that defendant's letter of September 27, 1945 "conclusively shows that he at all times understood that there was in existence a binding contract between plaintiff and himself." This argument is based on specious reasoning and it is only necessary to repeat in answer thereto that there was no contract between the parties for the delivery of the containers, plaintiff having failed to exercise the option in accordance with its terms. The primary purpose of defendant's letter of September 27, 1945 was to advise plaintiff that he (Odman) had exercised his right to retain the $100, which plaintiff deposited with him when the written option was delivered to her. Odman was specifically authorized to retain this $100 as "liquidated damages" under the terms of the option, if it was not exercised by plaintiff.

We are impelled to hold under the facts and circumstances in evidence and the law applicable thereto that plaintiff's purported exercise of the option was not an acceptance of the offer contained therein

but a counterproposal, which was not accepted by defendant orally or otherwise, and that plaintiff's counterproposal, not having been accepted by defendant, there was no contract between the parties.

Other points are urged but in the view we take of this case, it would serve no useful purpose to discuss them.

For the reasons stated herein the judgment of the circuit court of Cook county is affirmed.

*Affirmed.*

FRIEND and SCANLAN, JJ., concur.